[No. 22166-3-I. Division One. September 10, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. MATTHEW ROBERT GWINNER, *Appellant.*

120

*Andrew Zinner* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *John E. Bell, Deputy,* for respondent.

BAKER, J.—In this case we adopt the principle that evidence independently and lawfully obtained by federal officers acting pursuant to federal law is admissible in Washington state criminal proceedings, even when evidence obtained in a similar manner by state officers would violate state constitutional strictures.

I

Matthew Robert Gwinner appeals from his conviction for possession of cocaine, a violation of the Uniform Controlled Substances Act. He claims that the trial court erred in denying his motion to suppress evidence found in his truck.

At the hearing on the motion to suppress, Bellingham police detective Michael E. Johnston testified that sometime prior to April 14, 1987, he spoke with an informant who indicated that Gwinner would be trafficking cocaine through Sea–Tac International Airport. The informant indicated that Gwinner would be arriving on the 14th of April at approximately 2:30 p.m. and would be carrying four baggies of cocaine. The informant described Gwinner and said he had a blue Nissan truck with California license plates parked at the airport. The informant believed Gwinner intended to bring the cocaine back to Bellingham to sell.

Johnston made a telephone call relaying the information to special agent Bill E. Modesitt of the United States Department of Justice Drug Enforcement Administration, a member of the DEA Task Force at the airport. All members of the task force are commissioned federal officers.

A task force detective found the truck on the fifth floor of the airport parking garage. The vehicle was found to be registered to Gwinner.

When Gwinner arrived, he was followed from the arrival gate to the fourth floor of the airport parking garage by DEA agents. Gwinner then appeared to wander around the fourth floor, as if he did not know where his vehicle was parked. The agents approached him, identified themselves, and asked if they could speak with him. Gwinner agreed and subsequently consented to a search of his bag, where cocaine was discovered. He was then placed under arrest. The keys to his truck were seized.

The agents took him to a processing room where the material found in the bag was field tested. It yielded a positive result for cocaine. After the field test, the truck was opened and searched. Two or three small bindles of cocaine were found in the truck.

Gwinner admitted that he owned the truck and that he was walking to it at the time the agents approached him. None of the agents ever sought Gwinner's consent to conduct the vehicle search. Agent Modesitt testified that the

truck was seized pursuant to 21 U.S.C. § 881(a)(6) and the subsequent search was an inventory search.

The trial court denied the motion to suppress. It held that Gwinner "was planning to use his vehicle as a conveyance for the contraband and the vehicle was seized, after the arrest and discovery of cocaine, pursuant to 21 U.S.C. 881(a)(4), which is controlling." Following the denial of his motion, Gwinner submitted to a bench trial, stipulating to the facts contained in the police reports, and was found guilty.

## II

Gwinner argues that the warrantless seizure of his truck violated the Fourth Amendment since the State did not prove that an exception to the warrant requirement applied.

21 U.S.C. § 881(a) provides:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>> (1) All controlled substances which have been manufactured, distributed, dispensed, or acquired in violation of this subchapter.
>
> . . . .
>> (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) . . . ..

The statute provides further in 21 U.S.C. § 881(b) that property subject to civil forfeiture may be seized with a warrant, except that a warrantless seizure will be permitted when

>> (4) the Attorney General has probable cause to believe that the property is subject to civil forfeiture under this subchapter.

■ The federal circuits have considered the proper construction of section 881(b)(4) with differing results. *Compare United States v. Bush,* 647 F.2d 357, 368–69 (3d Cir. 1981) (warrantless seizure permitted on probable cause alone; exigent circumstances not required) *with United*

*States v. Pappas,* 613 F.2d 324, 330 (1st Cir. 1979) (warrantless seizure of automobile permitted only when agents have probable cause to believe vehicle is subject to forfeiture and exigent circumstances exist).[1] In a case that did not involve 21 U.S.C. § 881, the ninth Circuit held that probable cause alone may justify a warrantless search of a vehicle lawfully parked in a public place. *See United States v. Bagley,* 772 F.2d 482 (9th Cir. 1985) (abandoning prior holding consistent with *Pappas*), *cert. denied,* 475 U.S. 1023 (1986). It is clear, therefore, that the Ninth Circuit would now follow the analysis of *United States v. Bush, supra.*[2]

Here, the officers had probable cause to believe that Gwinner intended to use his truck to transport contraband, since they observed him walking toward the truck which they knew was registered to him. Since probable cause alone is sufficient under *Bagley* to justify the warrantless search or seizure of a lawfully parked vehicle, the forfeiture in this case was justified under federal law. *See Bagley,* 772 F.2d at 491.[3]

When we look to the requirements of our state constitution, however, we would probably reach a different result. In *State v. Patterson,* 112 Wn.2d 731, 774 P.2d 10 (1989),

---

[1]Most of the federal circuits have held that "non–exigent warrantless seizures are permissible under section 881." *United States v. One Parcel of Real Property,* 705 F. Supp. 710, 716 n.10 (D.R.I. 1989).

[2]The Eleventh Circuit opines, without reference to *Bagley,* that the Ninth Circuit would hold otherwise. *See United States v. Valdes,* 876 F.2d 1554, 1558 n.11 (11th Cir. 1989).

[3]The State also argues that *State v. Bradley,* 105 Wn.2d 898, 719 P.2d 546 (1986) supports the admission of the evidence in this case. However, the search in the instant case does not fall within any of the recognized exceptions to the warrant requirement set forth in *Bradley,* 105 Wn.2d at 902. It is true that one of the exceptions noted in *Bradley* is airport searches, but the cases applying that exception are not applicable here, since they deal with the standards for searches of boarding passengers in light of the dangers created by air piracy. *See, e.g., United States v. Skipwith,* 482 F.2d 1272 (5th Cir. 1973), *cited in Jacobsen v. Seattle,* 98 Wn.2d 668, 672, 658 P.2d 653 (1983).

the court held that in order to search a parked, immobile, unoccupied, secured vehicle absent a warrant, exigent circumstances other than the potential mobility of the automobile must exist. *Patterson,* 112 Wn.2d at 735. No exigent circumstances existed in this case. Thus, had this search been conducted by state officers acting pursuant to state law, this search may have violated the higher degree of privacy guaranteed by Const. art. 1, § 7, than is provided under the Fourth Amendment.[4] *See Patterson,* 112 Wn.2d at 752 (Dore, J., concurring). Since this seizure appears not to comport with state law, we must consider whether federal officers acting under the belief that they are enforcing 21 U.S.C. § 881 must conform their actions to the requirements of state constitutional law.

This question of federal and state comity is one of first impression in this state. It was recently addressed, however, in *State v. Mollica,* 114 N.J. 329, 554 A.2d 1315 (1989). There, a federal officer acting within New Jersey obtained evidence in a manner that was in compliance with federal law, but would have violated that state's constitution. The question presented there, as here, was whether after the evidence was turned over to state authorities, suppression in the state court was required.

The *Mollica* opinion traces the interesting history of the "silver platter" doctrine, developed in the federal courts at a time when federal standards for lawful searches and seizures were often more protective than the standards of many states. *Mollica,* at 347. That disparity resulted in the adoption of a principle in the federal courts that any evidence independently obtained by state officials could be "'turned over to the federal authorities on a silver platter.'" *Mollica,*

---

[4]This court has held that Washington's similar forfeiture statute, RCW 69.50-.505(b)(4), comports with the Fourth Amendment. *Lowery v. Nelson,* 43 Wn. App. 747, 750, 719 P.2d 594, *review denied,* 106 Wn.2d 1013 (1986), *appeal dismissed,* 479 U.S. 1024 (1987). The question of whether that statute offends article 1, section 7 of the state constitution, however, has never been addressed, *Lowery,* 43 Wn. App. at 750 n.5, and we do not purport to suggest an answer by analogy in this opinion.

at 347 (quoting *Lustig v. United States,* 338 U.S. 74, 93 L. Ed. 1819, 69 S. Ct. 1372 (1949)).

█ The *Mollica* court then concluded that consonant with principles of federalism, state constitutions do not control federal action, observing that state courts treat federal officers as officers from another jurisdiction. *Mollica,* 554 A.2d at 1327 (citing *State v. Bradley,* 105 Wn.2d 898, 902–03, 719 P.2d 546 (1986)). Further, it would not advance legitimate state interests to disallow the transfer of criminal evidence from federal to state authorities when the evidence was lawfully obtained by the former. *Mollica,* 554 A.2d at 1327–29. Thus, the evidence need not be suppressed in the state court, subject, however, to a "vital, significant condition": that the federal officers acted without the cooperation or assistance of state officers. *Mollica,* 554 A.2d at 1329–30.

This key element of the silver platter doctrine requires that the officers of the federal jurisdiction not act as agents of the forum state jurisdiction nor under color of state law. Such a determination involves consideration of the following factors:

> [A]ntecedent mutual planning, joint operations, cooperative investigations, or mutual assistance between federal and state officers may sufficiently establish agency and serve to bring the conduct of the federal agents under the color of state law. On the other hand, mere contact, awareness of ongoing investigations, or the exchange of information may not transmute the relationship into one of agency.

*Mollica,* at 356. Moreover,

> "* * * the court must be vigilant to scrutinize the attendant facts with an eye to detect and a hand to prevent violations of the Constitution by circuitous and indirect methods."

*Stonehill v. United States,* 405 F.2d 738, 744 (9th Cir. 1968) (quoting *Byars v. United States,* 273 U.S. 28, 32, 71 L. Ed. 520, 47 S. Ct. 248, 249 (1927)), *cert. denied,* 395 U.S. 960 (1969).

The record here reveals that the nature of the contact between Johnston and Modesitt was merely a transfer of information by telephone. There is no evidence to suggest

Johnston made any request that the vehicle be searched or had any foreknowledge that the search would occur. We therefore hold that no agency vel non between the state and federal officers existed. Nor were the federal officers acting under color of state law.

Furthermore, to suppress this evidence would not advance any legitimate state interests in protecting the privacy rights of citizens under our Const. art. 1, § 7.[5] Additionally, suppression would not deter our state officers from unlawful conduct, since we are not examining the conduct of state officers. Finally, we do not perceive any threat to the integrity of our judicial processes by allowing the consideration of such evidence. *See State v. White,* 97 Wn.2d 92, 109 n.8, 112, 640 P.2d 1061 (1982) (quoting *Mapp v. Ohio,* 367 U.S. 643, 660, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961)); *Mollica,* 554 A.2d at 1328.

Thus, we conclude that although the search may have violated state constitutional limitations under *Patterson,* the evidence need not have been suppressed. It was lawfully gathered under federal law by federal officers who

---

[5]We are aware of the continuing discussion, largely in dicta, regarding the nature of the relationship between Const. art. 1, § 7 and the exclusionary rule. *Compare State v. Bonds,* 98 Wn.2d 1, 11–12, 653 P.2d 1024 (1982) (whereas in federal courts primary purpose of exclusion is deterrence of police misconduct, primary purpose of exclusion under state law is to protect right to privacy; secondary purposes are deterrence of police misconduct and preservation of judicial integrity), *cert. denied,* 464 U.S. 831 (1983) *with State v. Murray,* 110 Wn.2d 706, 708–09, 757 P.2d 487 (1988) (recently articulated principles of state constitutional analysis may lead to results more consistent with federal law). However, whatever the theoretical basis for invoking the rule, its applicability depends upon state conduct. *See, e.g., State v. Clark,* 48 Wn. App. 850, 855, 743 P.2d 822, *review denied,* 109 Wn.2d 1015 (1987); Utter, J., *Survey of Washington Search and Seizure Law: 1988 Update,* 11 U. Puget Sound L. Rev. 411, 599 (1988). Since no state conduct is involved in this case, we do not intend by this opinion to influence that debate.

were not acting in cooperation with or at the request of state officers. Accordingly, we affirm.

SCHOLFIELD and WEBSTER, JJ., concur.

Review by Supreme Court pending May 15, 1991.