[No. 13948-4-III. Division Three. February 27, 1996.]

THE STATE OF WASHINGTON, *Appellant*, v.
SHANEDOAH LYNN OZUNA, *Respondent*.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Bruce Hanify, Deputy*, for appellant.

*Michael W. Lynch*, for respondent.

SCHULTHEIS, J. — The State of Washington appeals the suppression of evidence seized from a parked, unoccupied car, contending (1) there was sufficient articulable suspicion to make a cursory check of the car, (2) there was probable cause to believe a crime had occurred, and (3) there were sufficient exigent circumstances to justify a warrantless entry into the car. We affirm.

Early in the morning of January 14, 1994, Officer Perry Skipton investigated a report of "vehicular prowling." A witness had reported that he saw two men running from near his car, and that the car's alarm had been triggered. While searching the neighborhood, Officer Skipton spied a two-door car parked behind bushes near the area of the report. A check of the car's registration revealed its owner was Shanedoah Ozuna, a person the officer knew had a criminal record. Officer Skipton looked into the car's windows with a flashlight and saw an expensive-looking briefcase and attaché case in the front seat. He then opened the unlocked passenger door, reached around the front seat, flipped over an identification tag on a gym bag in the backseat, and read the name "Kevin Reddinger" on the tag. Dispatch called Mr. Reddinger, who checked his

car and then reported the gym bag must have been taken from his car during the night. The briefcase and attaché case were also determined to be stolen.

Mr. Ozuna was charged by information with one count of second-degree possession of stolen property. RCW 9A.56.140(1), .160(a). In a suppression hearing held on February 23, 1994, the court heard testimony from Officer Skipton. Based on its finding that the officer had not received a report of the stolen items, the court concluded there was no probable cause to believe the items in the vehicle were stolen and there were no exigent circumstances otherwise justifying the warrantless entry. All evidence seized from Mr. Ozuna's vehicle was suppressed and the State moved for dismissal. This appeal followed.

The State contends the court erred in finding that Officer Skipton's warrantless search of the unlocked car was unjustified. It argues the car was subject to a proper *Terry* "stop and frisk," based on a reasonable suspicion the car was involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Even if not justified as a search incident to a *Terry* stop, however, the State argues the search was constitutional because the officer had probable cause to believe the items in clear view in the car were stolen, and there were exigent circumstances requiring a warrantless search.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution provide that searches conducted without warrants are per se illegal unless they come within specially established exceptions to the warrant requirement. *State v. Lopez*, 70 Wn. App. 259, 268, 856 P.2d 390 (1993), *review denied*, 123 Wn.2d 1002 (1994). *See, e.g., State v. Rose*, 128 Wn.2d 388, 392, 909 P.2d 280, 283 (1996) (open view exception); *State v. Herzog*, 73 Wn. App. 34, 52, 867 P.2d 648 (observation from nonconstitutionally protected area exception), *review denied*, 124 Wn.2d 1022 (1994). It is the State's burden to show that a warrantless search falls within one of the exceptions. *Lopez*, 70 Wn. App. at 268.

■ One such exception is the search for weapons incident to an investigatory, or *Terry*, stop. The State cites *State v. Kennedy*, 107 Wn.2d 1, 726 P.2d 445 (1986), for the proposition that an automobile is subject to a *Terry* "stop and frisk" just as a human being would be. This argument is without merit. In the *Kennedy* line of cases, the officers made investigatory stops to question persons reasonably suspected of criminal activity. Incident to that stop, the officers had authority to search the cars *only* for weapons. *See, e.g., State v. Watkins*, 76 Wn. App. 726, 730, 887 P.2d 492 (1995); *State v. Wilkinson*, 56 Wn. App. 812, 815, 785 P.2d 1139, *review denied*, 114 Wn.2d 1015 (1990). No person was "stopped" here. Further, Officer Skipton never claimed he conducted the search for officer safety.

■ Another exception is more applicable to these facts. *State v. Smith*, 88 Wn.2d 127, 137-38, 559 P.2d 970, *cert. denied*, 434 U.S. 876 (1977), held that a warrantless search and seizure may be justified by "probable cause coupled with . . . exigent circumstances regarding the security and acquisition of incriminating evidence . . . ." *State v. Patterson*, 112 Wn.2d 731, 734, 774 P.2d 10 (1989) extended the *Smith* exception to searches of parked, unoccupied cars. Even if the officers reasonably believe that items seen inside a vehicle are stolen, the court held, there must be exigent circumstances making it impractical to obtain a search warrant. *Patterson*, 112 Wn.2d at 733-36. *See also State v. Gwinner*, 59 Wn. App. 119, 123-24, 796 P.2d 728 (1990) (probable cause to believe vehicle would be used to transport contraband, but no exigent circumstances), *review denied*, 117 Wn.2d 1004 (1991).

■ Determinations of probable cause are made by looking at the facts and circumstances known to the officer, including that information gleaned from reasonably trustworthy sources. *Bokor v. Department of Licensing*, 74 Wn. App. 523, 526, 874 P.2d 168 (1994) (probable cause as it relates to arrest). Officer Skipton testified he was suspicious of the car because it was parked on the grass, apparently on an elementary school's property, and it was

tucked into bushes that partially hid its presence. After he discovered the car was registered to a person he knew had a criminal record, he decided to take a closer look. From a vantage point outside the car, he observed that the unkempt condition of the car contrasted oddly with the expensive-looking briefcase and attaché case clearly visible inside. He also noted that the vehicle prowling report had come from an apartment complex just across the street from where the car was found. These facts and observations led the officer to believe the car was involved in the vehicle prowl.

We agree with the trial court, however, that the facts and circumstances did not give rise to probable cause. In particular, we note that (1) none of the items seen in Mr. Ozuna's car had been reported stolen, (2) the person who called in the vehicle prowl report had not reported anything stolen, and (3) although the car was parked near the scene of the crime, the two men were seen running in the opposite direction.

Most important, Officer Skipton had no information to tie this particular parked car to the vehicle prowl. In those cases where the courts have found probable cause justifying a warrantless search of a parked car, the officers were usually aware of specific information tying the car to a specific crime.

In *Gwinner*, for example, the officers had received information from an informant who told them the defendant had a blue Nissan truck with California license plates parked at the airport. A truck matching that description and registered to the defendant was found in the airport parking lot. *Gwinner*, 59 Wn. App. at 121. In *State v. Young*, 28 Wn. App. 412, 624 P.2d 725, *review denied*, 95 Wn.2d 1024 (1981), the officer saw a car parked in a shopping center parking lot at 2:00 A.M. about 150 feet from a supermarket that had just been burgled. The officer left to secure the supermarket, and when he returned, the car door was standing open. Inside, he saw tools often used by burglars and torn yellow pages advertising the burgled

store as well as others. Significantly, the defendant did not dispute there was probable cause to believe the items were evidence of a crime. *Young*, 28 Wn. App. at 418. Finally, in *Patterson*, an officer responding to a music store burglary noticed a car driving the wrong way on a one-way street only two blocks from the burglary. About five minutes later, another officer found the same car parked six blocks from the burglary. A witness told the officers the car had been in the parking spot about 15 minutes. Without entering the car, the officers saw new stereo amplifiers with a price tag still attached. The trial court found probable cause, but no exigencies justifying a warrantless search. *Patterson*, 112 Wn.2d at 733.

■ ■ Even if we had found probable cause here, the warrantless search was unlawful because no exigencies existed. *Patterson*, 112 Wn.2d at 735-36. Washington courts have held that the mere fact that a car is potentially mobile is not enough of an exigency to support a warrantless search. *Patterson*, 112 Wn.2d at 735; *Gwinner*, 59 Wn. App. at 124. Inconvenience to the officers is also inadequate. *Young*, 28 Wn. App. at 418. Exigencies have been found when the defendant is still at large, has accomplices who could remove the evidence, or when there is an immediate need to pursue a promising investigation. *Patterson*, 112 Wn.2d at 736; *Young*, 28 Wn. App. at 419. While the vehicle prowl suspects were still at large in this case, nothing connected them with this car, they were seen running away from it, and the investigation was based on suspicion rather than probable cause.

Of course, technically speaking, an officer will not have "searched" a car if the items seen through its window are clearly contraband. This "open view" doctrine applies if the weapon or contraband is seen from a nonconstitutionally protected area. *Rose*, 128 Wn.2d at 392; *Kennedy*, 107 Wn.2d at 10. In both *Rose* and *Kennedy*, marijuana was clearly visible and recognizable from a nonconstitutionally protected area. Here, the court found that the briefcase, attaché case and gym bag were not reasonably

recognizable as contraband: nothing had been reported stolen, and as the court noted, any car could be subject to search if the police were allowed to find probable cause in an unkempt car that contained expensive-looking objects.

■ The State's final argument is that Officer Skipton's investigation did not constitute a search because Mr. Ozuna had no reasonable expectation of privacy in his illegally parked car. Citing *State v. Cleator*, 71 Wn. App. 217, 857 P.2d 306 (1993) (less expectation of privacy in a tent set up illegally on public land), *review denied*, 123 Wn.2d 1024 (1994), the State contends Mr. Ozuna had no right to expect privacy in a vehicle that could have been towed at any time. In *Cleator*, however, the defendant did not own the tent wherein the contraband was found; the tent was obviously erected where it had no right to be; and the officer restricted his search to opening a loose tent flap, looking inside and seeing property he immediately and reasonably recognized as stolen. No evidence was presented here that Mr. Ozuna was trespassing where he parked his car. Recognizing that the police officer might reasonably believe the car was illegally parked, we nonetheless find that Mr. Ozuna had a right to expect privacy in the contents of his car. *City of Seattle v. Mesiani*, 110 Wn.2d 454, 456-57, 755 P.2d 775 (1988). Significantly, even in *Cleator*, the officer merely looked through the zipped-up screen of the tent; he did not, as did Officer Skipton here, open it, reach inside and examine the personal property within.

■ "[C]onclusions entered by a trial court following a suppression hearing carry great significance for a reviewing court." *State v. Collins*, 121 Wn.2d 168, 174, 847 P.2d 919 (1993). In this case, we find the court's conclusion that the warrantless entry into the parked car was not supported by probable cause or exigent circumstances is amply supported by the evidence and by law.

Affirmed.

SWEENEY, C.J., and THOMPSON, J., concur.

Review denied at 129 Wn.2d 1030 (1996).