# In the Iowa Supreme Court

No. 23–0480

Submitted November 19, 2024—Filed December 20, 2024

**State of Iowa,**

Appellee,

vs.

**Artell Jamario Young,**

Appellant.

Appeal from the Iowa District Court for Polk County, William P. Kelly, judge.

A defendant appeals his convictions for various drug offenses, arguing that the search of his home by federal probation officers violated article I, section 8 of the Iowa Constitution. **Affirmed.**

Mansfield, J., delivered the opinion of the court in which all justices joined.

Martha J. Lucey, State Appellate Defender, and Melinda J. Nye (argued), Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven (argued), Assistant Attorney General, for appellee.

**Mansfield, Justice.**

### I. Introduction.

Two stars keep not their motion in one sphere;
Nor can one England brook a double reign.

William Shakespeare, *Henry IV Part I*, act 5, sc. 4, l. 3019–20.

The genius of our federal system is that it does "brook a double reign." Our citizens are governed by two sovereigns: state and federal. This system has served America well, but it results in considerable work for judges, who must decide which sovereign's law to apply when a case involves the acts of both.

An individual who was under federal supervised release agreed that he would submit to searches of his person, vehicle, or home if federal probation officers had reasonable suspicion to believe that those areas contained contraband or that he had violated the terms of his release. After receiving information that the individual was illegally dealing drugs and illegally possessing a firearm, federal probation officers conducted a search of his home, where they discovered relatively small amounts of crack cocaine, powdered cocaine, and marijuana. Concluding that this level of criminal activity was more that of a Falstaff than a Hotspur, the federal authorities turned the matter over to Iowa authorities. *Compare* William Shakespeare*, Henry IV Part I*, act 1, sc. 2, *with id.* act 1, sc. 3. Charges were brought, and the individual was convicted of several aggravated misdemeanor drug offenses. He now appeals, claiming that the search of his home by federal probation officers violated Iowa constitutional standards but not claiming that it violated federal standards.

We conclude that the constitutionality of the search should be evaluated by the law of the sovereign that initiated and conducted the search—not by the law of the sovereign that had nothing to do with the search. We therefore reject the defendant's claim of an illegal search and affirm his convictions.

## II. Facts and Procedural History.

Artell Young, whose criminal history includes convictions for state weapons offenses from 2008, 2014, and 2016, was convicted of the federal crime of felon in possession of a firearm in federal district court in February 2017. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2). He received a prison sentence. Following his discharge from prison in January 2019, Young had to undergo a thirty-six-month period of supervised release.[1] He was assigned to United States Probation Officer Amy Johnson. A condition of Young's supervised release authorized him to be searched by federal probation officers:

> You will submit to a search of your person, property, residence, adjacent structures, office, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), and other electronic communications or data storage devices or media, conducted by a U.S. Probation Officer. Failure to submit to a search may be grounds for revocation. You must warn any other residents or occupants that the premises and/or vehicle may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that you have violated a condition of your release and/or that the area(s) or item(s) to be searched contain evidence of this violation or contain contraband. Any search must be conducted at a reasonable time and in a reasonable manner. This condition may be invoked with or without the assistance of law enforcement, including the U.S. Marshals Service.

In February 2021, Officer Johnson received information from a confidential source that Young was selling controlled substances. The source also reported seeing Young in possession of a black handgun on at least two separate occasions. Reportedly, the gun was owned by Young's wife, Jasmine Evans, but the source had observed Young handling it.

---

[1] *See United States v. Makeeff*, No. 4:14–cr–00081–SMR–CFB, 2015 WL 13284966, at *4 (S.D. Iowa Feb. 6, 2015) ("The Court must first note that this case involves federal supervised release, not probation or parole. Supervisees, in a sense, enjoy the least amount of privacy in this context."), *aff'd*, 820 F.3d 995 (8th Cir. 2016) (per curiam).

In September, Young was arrested for operating a motor vehicle while intoxicated. *See* Iowa Code § 321J.2 (2021). Then, in November, the same confidential source informed Officer Johnson that they saw Young receiving drugs and telling people that he was cooking cocaine.

Officer Johnson submitted a formal search request to the search coordinator for the judicial district—United States Probation Officer Justin Song. The purpose of the search was to look for "[e]vidence of a violation of [Young's] conditions which includes evidence of a crime." Officer Song determined there was reasonable suspicion to conduct a search in accordance with the search conditions of Young's supervised release. Meanwhile, Young failed to appear for a mandatory random drug test.

On December 22, Young arrived at the probation office for a scheduled visit. He was driven by his wife, Evans. Upon arrival, Young was handcuffed and searched by Officer Song and other probation officers. No contraband was found on his person. With Young temporarily detained, the probation officers went outside to make contact with Evans. They searched the car and retrieved Young's cellphone. Officer Song asked Evans if she was carrying a firearm. She stated that she was and consented to a search of her purse. In the purse, a 9mm firearm and a magazine were found.

After being informed that the probation officers would be conducting a search of their home, Young and Evans agreed to let the probation officers drive them back to the house. Young and Evans helped secure their dogs while the probation officers conducted the search. About a dozen officers were present. They searched the home for a period of several hours. The search team uncovered a 4.7-gram bag of crack cocaine and a 3.4-gram bag of powdered cocaine inside a child's shoe in a child's bedroom. They also found 35.9 grams

of marijuana in a kitchen drawer. In addition, they located a digital scale with white residue and a partial box of 9mm ammunition.

Officer Johnson, acting as the evidence technician, conducted the search of Young's phone and discovered some text messages relating to drug transactions. On December 5, Young had offered to sell someone fifty "shingles" for $1,000. In a text exchange on October 26, someone sent Young multiple pictures of what appeared to be marijuana and asked, "You need more or is them good?!" Young responded, "Ok I will let me send it out to some of my people."

Because the quantities of drugs found were not typical of the weights that warranted federal prosecution, the officers turned over the results of their search of Young's home and cellphone to the Des Moines Police Department. Until then, no state or local law enforcement personnel had been aware of the search.

A trial information was filed in the Polk County District Court charging Young with possession with intent to deliver crack cocaine, possession of a controlled substance (cocaine) as a second offense, possession of a controlled substance (marijuana) as a second offense, and failure to possess a tax stamp. *See* Iowa Code § 124.401(1)(*c*)(3), (5); *id.* § 453B.3.

Young moved to suppress the evidence found during the warrantless search of his home, alleging violations of the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. A hearing on the motion to suppress took place. Officers Johnson and Song testified.

The district court upheld the search on two grounds. First, it determined that the "special needs" exception authorized search under both the Fourth Amendment and article I, section 8. *See Griffin v. Wisconsin*, 483 U.S. 868,

875–76 (1987); *State v. Brooks*, 888 N.W.2d 406, 416 (Iowa 2016); *State v. King*, 867 N.W.2d 106, 121–22 (Iowa 2015). Specifically, the court stated,

> [H]ere, it was U.S. Probation Officers who conducted the search of Defendant's home in December of 2021, acting upon reasonable suspicion Defendant had violated the terms of his probation and then he missed a drug test. U.S. PO Johnson testified credibly that the search was for the purposes of discovering evidence of violations of probation rather than evidence of new criminal activity for new criminal charges. Police from DMPD were called after the search.

(Citation omitted.)

Later, in denying Young's motion for reconsideration, the district court provided an alternative ground for its ruling. It determined that even if Iowa's version of the special-needs exception did not justify the search under article I, section 8, that was of no moment because the search was conducted entirely by federal officers in compliance with federal standards. *See State v. Ramirez*, 895 N.W.2d 884, 898 (Iowa 2017). As the court put it, "Defendant was not under state supervision nor did state officers or police officers conduct the search. As such, the search was entirely justified in the federal justice system."

A jury subsequently found Young guilty of three counts of possession of a controlled substance second offense for the crack cocaine, cocaine, and marijuana, respectively. It acquitted him of the more serious charge of possession of crack cocaine with intent to deliver and acquitted him of failure to possess a drug tax stamp. On March 21, 2023, the district court sentenced Young to consecutive sentences of imprisonment totaling six years and ordered him to pay fines and restitution. *See* Iowa Code § 124.401(5).

Young has appealed his convictions, arguing that the search of his home violated article I, section 8. We retained the appeal.

**III. Standard of Review.**

"We review the district court's denial of a motion to suppress based on deprivation of a constitutional right de novo." *State v. Bauler*, 8 N.W.3d 892, 897 (Iowa 2024) (quoting *State v. Arrieta*, 998 N.W.2d 617, 620 (Iowa 2023)). "We independently evaluate the entire record and consider the totality of the circumstances." *Id.* "We defer to the findings of fact made by the district court, 'but we are not bound by them.' " *Id.* (quoting *Arrieta*, 998 N.W.2d at 620).

**IV. Analysis.**

Young challenges the warrantless search of his home only as a violation of article I, section 8 of the Iowa Constitution. We believe there is little room for debate that the search complied with the Fourth Amendment, and Young does not argue otherwise. We begin by reviewing relevant precedents of the United States Supreme Court and our court.

**A. The Fourth Amendment Special-Needs Doctrine.** In *Griffin v. Wisconsin*, the United States Supreme Court upheld a warrantless search of a probationer's apartment. 483 U.S. at 880. A probation officer performed the search under a regulation that authorized any probation officer to search a probationer's apartment so long as the supervisor approved and there were "reasonable grounds" to believe contraband was present. *Id.* at 870–71. The Court explained that "[a] State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Id.* at 873–74. Thus *Griffin* gave rise to the so-called "special needs" exception to the warrant requirement.

Going further, in *United States v. Knights,* the Court upheld the warrantless search of a probationer's apartment conducted by local law enforcement rather than probation officers. 534 U.S. 112, 114–15, 122 (2001). The Court recognized that the State has "a dual concern with a probationer." *Id.* at 120. Part of this concern involves "apprehending violators of the criminal law." *Id.* at 121. Citing statistics, the Court explained that "[t]he recidivism rate of probationers is significantly higher than the general crime rate." *Id.* at 120. Therefore, the Court held that a warrantless search of a probationer—regardless of its "official purpose"—could be squared with the Fourth Amendment so long as it was based on reasonable suspicion and a probation agreement that authorized warrantless searches at any time. *Id.* at 121–22.

**B. The Special-Needs Doctrine Under Article I, Section 8.** Our court has not followed *Knights* in interpreting article I, section 8 of the Iowa Constitution. In *State v. Short,* we held that a warrantless search of a probationer's apartment violated article I, section 8 despite a probation agreement authorizing the search and even though law enforcement had "good reason" to conduct the search. 851 N.W.2d 474, 476–77, 502–04 (Iowa 2014). Plymouth County sheriff's deputies performed the search based on a warrant that had the wrong address. *Id.* at 476. Thus, the search in *Short* "was not a probationary search but was instead an investigatory search by law enforcement related to new crimes." *Id.* at 476–77. In overturning the convictions, we concluded that the warrant requirement has "full applicability" to home searches of probationers by law enforcement. *Id.* at 506.

Subsequent to *Short,* we held in *State v. King* that article I, section 8 did not necessarily bar a warrantless search by a parole officer of a parolee's home. 867 N.W.2d at 109. The parole search in *King* uncovered drugs used to prosecute

the defendant for a new crime. *Id.* We discussed the "special needs" doctrine, observing that *Griffin* was "the most pertinent federal precedent in the special-needs area for the present case." *Id.* at 115. We noted that "[a] distinction exists between searches to pursue the purposes of law enforcement and those to pursue the purposes of carrying out the mission of parole." *Id.* at 122. Applying the special-needs doctrine, we held that the search was lawful. *Id.* at 126. We concluded,

> [P]arole officers have a special need to search the home of parolees as authorized by a parole agreement and not refused by the parolee when done to promote the goals of parole, divorced from the goals of law enforcement, supported by reasonable suspicion based on knowledge arising out of the supervision of parole.

*Id.* at 126.

A year later, in *State v. Brooks*, we followed a similar approach in a case involving a probationer. 888 N.W.2d at 408. We decided that no violation of article I, section 8 occurred when two Iowa probation officers made a warrantless entry into a probationer's bedroom. *Id.* The defendant had previously been convicted of two methamphetamine-related offenses. *Id.* The probation officers received a report that he had relapsed on methamphetamine. *Id.* The defendant's written probation agreement provided that he consented to warrantless searches on reasonable suspicion and that he agreed not to possess or use drugs. *Id.*

We concluded that this probationary search, which yielded the methamphetamine used to revoke the defendant's probation, also fell within the special-needs doctrine as elaborated in *King. Id.* at 410. The search was performed by "probation officers carrying out a probation mission." *Id.* at 408. As we put it, "This is not a case like *Short*, where the probationary status of the defendant became an after-the-fact justification for a warrantless search of his residence for independent law-enforcement purposes." *Id.* at 415.

**C. The Silver Platter Doctrine in Iowa.** Finally, a year after *Brooks*, we relied on a separate legal doctrine to hold that a federal search should be evaluated under federal, rather than Iowa, standards, even though the results of the search had been used as evidence in an Iowa criminal case. That is, we found no violation of Iowa law when federal agents—having conducted a search of an apartment pursuant to a form of search warrant that was valid under federal but not Iowa law—turned the contraband over to state authorities for prosecution. *See State v. Ramirez*, 895 N.W.2d at 886–88.

The case of *State v. Ramirez* began when agents of the federal Department of Homeland Security learned that the defendant in Waterloo was due to receive a package from Mexico that contained methamphetamine. *Id.* at 886–87. They obtained an anticipatory search warrant from the federal district court based on the expected future delivery. *Id.* at 887. Federal law permits anticipatory search warrants; Iowa law does not. *Id.* at 892–93; *see also State v. Gillespie*, 530 N.W.2d 446, 449 (Iowa 1995) ("[Iowa Code] sections 808.3 and 808.4 plainly do not contemplate future acts or events as constituting probable cause."). The federal agents executed the warrant and seized the methamphetamine, but thereafter the case was turned over to the Black Hawk County Attorney's office. *Ramirez*, 895 N.W.2d at 888.

In sustaining the search over the objection that it did not comply with Iowa law, we reasoned,

> When a bona fide federal investigation leads to a valid federal search, but the evidence is later turned over to state authorities for a state prosecution, we do not believe deterrence or judicial integrity necessarily require a reexamination of the search under standards

that hypothetically would have prevailed if the search had been performed by state authorities.

*Id.* at 898. We emphasized that

[t]he record is devoid of any suggestion that any party was trying to circumvent Iowa search and seizure law. . . . It is true that the case was ultimately turned over for state prosecution. But there is no indication in the record that such a determination had been made before the search warrant was obtained and the search was carried out.

*Id.* at 893.

**D. Resolving This Case.** The State here argues that the federal probation officers' search of Young's home can be upheld on three independent grounds. First, it urges that *Ramirez* applies to this case. In the State's view, an Iowa court should not exclude the results of a search performed by federal officers that was indisputably valid under federal law, regardless of what Iowa law may provide if the search were conducted by Iowa officers. Second, the State maintains that the special-needs exception to the warrant requirement as recognized in *King* and *Brooks* would apply here even if the search were measured according to Iowa constitutional standards. Third, the State argues that *Short* should, if necessary, be overruled and *Knights* should be adopted as the controlling law under article I, section 8.

We reach only the State's first argument, which is dispositive. This case is like *Ramirez* in that the search was clearly *lawful*. Young asks us to evaluate it as if it had been performed by someone else who didn't actually perform it. In *Ramirez*, we asked, "Should Iowa invalidate a search that would not have been invalidated under the law of the jurisdiction pursuant to which it was conducted?" 895 N.W.2d at 894. We answered no. *Id.* We concluded that admission of the evidence neither "rewarded unlawful police conduct or undermined the integrity of our courts"; rather, "it accorded a proper recognition

to the bona fide actions of the federal government pursuant to that government's lawful authority." *Id.* at 898. All that is true here.

Also, as in *Ramirez*, there is no "dirty silver platter." *See id.* at 893; Wayne A. Logan, *Dirty Silver Platters: The Enduring Challenge of Intergovernmental Investigative Illegality*, 99 Iowa L. Rev. 293, 312–13 (2013). This was purely the activity of a federal probation office dealing with someone who was on federal supervised release. State and local law enforcement did not know of the operation. So no suggestion can be made that this was an attempt to bypass Iowa search and seizure restrictions by enlisting federal officers.

Further, in *Ramirez*, we noted that the weight of out-of-state authority supported our decision to admit the results of a federal search that was lawful by federal standards:

> Courts in a number of states have concluded that evidence lawfully obtained by federal officials, under a federal investigation meeting federal standards, may be used in a subsequent state prosecution even though state law would not have permitted the same type of search. *See Morales v. State*, 407 So. 2d 321, 329 (Fla. Dist. Ct. App. 1981); *People v. Fidler*, 72 Ill.App.3d 924, 29 Ill.Dec. 51, 391 N.E.2d 210, 211 (1979); *Basham v. Commonwealth*, 675 S.W.2d 376, 379 (Ky. 1984); *Commonwealth v. Brown*, 456 Mass. 708, 925 N.E.2d 845, 849–51 (2010); *State v. Mollica*, 114 N.J. 329, 554 A.2d 1315, 1327–28 (1989); *State v. Toone*, 823 S.W.2d 744, 747 (Texas Ct. App. 1992); *King v. State*, 746 S.W.2d 515, 519 (Tex. Ct. App. 1988); *State v. Coburn*, 165 Vt. 318, 683 A.2d 1343, 1347 (1996); *State v. Dreibelbis*, 147 Vt. 98, 511 A.2d 307, 308 (1986); *State v. Bradley*, 105 Wash.2d 898, 719 P.2d 546, 549 (1986) (en banc); *State v. Gwinner*, 59 Wash. App. 119, 796 P.2d 728, 731–32 (1990); *see also People v. Blair*, 25 Cal.3d 640, 159 Cal. Rptr. 818, 602 P.2d 738, 747–48 (1979) (en banc) (finding evidence admissible that had "been legally seized under federal law and under the law of Pennsylvania, [even though] the seizure would have violated article I, section 13, of the California Constitution if it had occurred in this state").

895 N.W.2d at 895. Several of the cases cited involved searches that would have violated the state's *constitution* if performed by state officials. *See Commonwealth*

*v. Brown*, 925 N.E.2d 845, 851 (Mass. 2010); *State v. Toone*, 823 S.W.2d 744, 748 (Tex. App. 1992); *State v. Gwinner*, 796 P.2d 728, 729 (Wash. App. 1990); *State v. Mollica*, 554 A.2d 1315, 1323 (N.J. 1989); *People v. Blair*, 602 P.2d 738, 747–48 (Cal. 1979) (en banc). We discussed two of them—*State v. Mollica* and *Commonwealth v. Brown*—at length approvingly. *See Ramirez*, 895 N.W.2d at 895–98.

Young points out that we were careful to emphasize in *Ramirez* that the defendant was claiming only a violation of the Iowa warrant statute; he did not claim a violation of the Iowa Constitution. *See id.* at 898 ("While Iowa law would not have authorized the type of warrant issued, no argument is raised that the search—if statutorily authorized—would have violated the Iowa Constitution."). Indeed, we distinguished some adverse out-of-state authority on that basis:

> It is true that a few state jurisdictions have declined to allow evidence seized in a warrantless federal search to be admitted in a state proceeding where the search would have violated *the state constitution. See State v. Torres*, 125 Hawai'i 382, 262 P.3d 1006, 1021 (2011); *State v. Cardenas-Alvarez,* 130 N.M. 386, 25 P.3d 225, 233 (2001); *People v. Griminger,* 71 N.Y.2d 635, 529 N.Y.S.2d 55, 524 N.E.2d 409, 412 (1988). Yet the present case is different. Although Ramirez raises article I, section 8 of the Iowa Constitution in his briefing, he does not claim that *the search itself* would have violated the Iowa Constitution. Rather, he maintains only that Iowa statutes do not authorize this type of search and, therefore, it would violate the Iowa Constitution *to admit the results of the search in an Iowa court.* We disagree with that broad proposition.

*Id.*

But we agree with the State that the underlying rationale of *Ramirez* does not turn on whether the federal search was alleged to violate Iowa statutory or Iowa constitutional standards. The critical point in *Ramirez* was that "the search was lawful under federal law." *Id.* at 894. We said that the out-of-state decisions upholding such searches were "persuasive," notwithstanding that several of

them involved searches that would have violated state constitutions. *Id.* at 898. And we focused on the twin goals of deterrence and judicial integrity, neither of which would be impaired so long as the search was lawful according to the standards by which it was conducted. *Id.*[2]

Young urges us to follow the Hawaii Supreme Court's decision in *State v. Torres*, 262 P.3d 1006 (Haw. 2011). There the court adopted a rule against the admittance in Hawaii courts of evidence obtained by federal agents under a search that complied with the Fourth Amendment but would have violated the Hawaii Constitution. *Id.* at 1019–21. The decision was in a sense advisory because the searches in the case were ultimately upheld. *Id.* at 1023–24.

In any event, we respectfully disagree with the Hawaii Supreme Court's reasoning. We do not believe that by admitting the results of a lawful federal search, state courts "would necessarily be placing their imprimatur of approval on evidence that would otherwise be deemed illegal, thus compromising the integrity of our courts." *Id.* at 1019. By that logic, when courts apply the "inevitable discovery" doctrine, under which illegally obtained evidence can be admitted when it would have been discovered anyway, *see, e.g., State v. Tyler*, 867 N.W.2d 136, 171 (Iowa 2015), they are likewise giving an imprimatur to an improper search. We think not. A court decision stands for what it says, not for what it might symbolize. Nor do we agree that exclusion of the evidence is necessary to "deter any federal and state cooperation 'to evade state law.'" *Torres*, 262 P.3d at 1020. That goal can be achieved simply by suppressing the

---

[2]One can conceive of an extreme case where evidence was obtained in a jurisdiction whose legal system did not offer basic human rights protections. We might say that our judicial integrity would be offended by using that evidence in one of our criminal cases. Obviously, that's not the situation here.

evidence when the record shows that there *was* cooperation aimed at evading state law.

We are also aware that during the intervening time period since *Ramirez* was decided, the Vermont Supreme Court declined to allow "silver platter" evidence in *State v. Walker-Brazie*, 280 A.3d 24, 25–26 (Vt. 2021). That 3–2 decision involved a warrantless stop and search of a vehicle near the Canadian border by federal Border Patrol agents using their "roving patrol" authority. *Id.* at 26; *see also United States v. Brignoni-Ponce,* 422 U.S. 873, 878–85 (1975). Controlled substances were found, and the case was turned over to Vermont authorities for prosecution. *Walker-Brazie*, 280 A.3d at 26. The court noted, "A warrantless search of an automobile is per se unreasonable under Article 11 [of the Vermont Constitution] unless there exists probable cause and a showing of exigent circumstances, meaning a threat to officer safety or to the preservation of evidence." *Id.* at 29. The court also noted, "The language of Article 11 is broadly worded—it protects individuals from unreasonable searches or seizures 'by any officer or messenger.' " *Id.* at 36. Additionally, the court emphasized the "privacy rationale" behind Vermont's exclusionary rule. *Id.* at 35–37. For these reasons and others, the court held that "evidence gathered in violation of article 11 by Border Patrol agents on roving patrol is not admissible in a state criminal proceeding." *Id.* at 37.

*Walker-Brazie* is animated by an approach different from the one we have taken in our constitutional jurisprudence. Article I, section 8—unlike article 11 of the Vermont Constitution—does not purport to apply to "any officer." *Compare* Iowa Const. art. I, § 8, *with* Vt. Const. ch. I, art. XI. Thus, we have evaluated the legality of a search conducted entirely by non-Iowa officials according to the standards of that other jurisdiction. *See Ramirez,* 895 N.W.2d at 898.

Additionally, we have not said that our exclusionary rule exists to protect privacy per se. Rather, our exclusionary rule serves to remedy *constitutional violations*. *See State v. Cline*, 617 N.W.2d 277, 289 (Iowa 2000) (en banc), *abrogated on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001). Federal probation officers committed no constitutional violation at the moment they searched Young's home under federal authority; Young concedes this point.

In sum, we conclude that the reasoning and result in *Ramirez* extend to a search by federal probation officers that occurred without the knowledge or involvement of state law enforcement and that complied with federal law but that is alleged to contravene state constitutional standards. The district court's ruling "accorded a proper recognition to the bona fide actions of the federal government pursuant to that government's lawful authority." *Ramirez*, 895 N.W.2d at 898. We hold that the motion to suppress was properly denied.

**V. Conclusion.**

For the foregoing reasons, we affirm Young's convictions and sentence.

**Affirmed.**